## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ELI WHITE,
an individual,

                                        Case No.:

     Plaintiff,

v.

MISSOURI HIGHER EDUCATION LOAN
AUTHORITY d/b/a/ MOHELA,
a corporation, and
TRANS UNION LLC,
a foreign limited liability company,

     Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ELI WHITE (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, MISSOURI HIGHER EDUCATION LOAN AUTHORITY d/b/a/ MOHELA (hereinafter, "MOHELA") and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for MOHELA's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein MOHELA improperly attempted to credit-report and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit

1

file as maintained by TransUnion that was created or allegedly incurred as a result of identity theft and fraud. More specifically, despite Plaintiff repeatedly advising MOHELA that he did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed MOHELA's reporting of such erroneous information directly to TransUnion— MOHELA *continued* to report this fraudulent account with a significant balance due and past-due.

2.      Furthermore, this is an action for damages for TransUnion's violations of the FCRA wherein Trans Union continued to incorrectly report Plaintiff as the individual responsible for the alleged MOHELA account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Trans Union including sworn statements.

3.      Additionally, this is an action for damages for violations of the Florida Consumer Collection Practices Act, Chapter 559 Florida Statutes (hereinafter, the "FCCPA"), wherein MOHELA communicated with Plaintiff in an attempt to collect a consumer debt MOHELA knew was not legitimately owed by Plaintiff.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq., and has supplemental authority over Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

2

5.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.    Venue is proper in this District as the acts and transactions described herein occur in this District.

7.    At all material times herein, Plaintiff is a natural person residing in Hillsborough County, Florida.

8.    At all material times herein, MOHELA is a corporation existing under the laws of the state of Missouri, with its principal place of business located at 633 Spirit Drive, Chesterfield, Missouri 63005.

9.    At all material times herein, MOHELA uses instrumentalities of interstate commerce or the mail in a business the principal purpose of which is the collection of debts.

10.    At all material times herein, MOHELA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

12.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information.  *See* 15 United States Code, Section 1681b.

13.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

14.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

15.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

16.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

17.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or

accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

18.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

19.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## FCCPA STATUTORY STRUCTURE

20.    The FCCPA is a state consumer protection statute, modeled after the federal FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in

the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

21.    The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

22.    Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

23.    For example, the FCCPA prohibits a person from attempting to collect a consumer debt in a manner that can be expected to harass or abuse the consumer debt and prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. *See* Fla. Stat. §§ 559.72 (7) and (9).

## GENERAL ALLEGATIONS

24.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA and the FCCPA because he is an individual and allegedly obligated to pay a debt.

25.    At all material times herein, MOHELA, itself and through its subsidiaries, regularly extends student loans—and credit reports debts associated with

the same—allegedly owed by consumers residing in Hillsborough County, Florida.

26.    At all material times herein, MOHELA attempts to collect and reports information concerning an alleged student loan account that was opened as a result of identity theft and fraud, referenced by account number beginning 298720- and/or 2143821541- (hereinafter, the "Alleged Debt" or the "Account").

27.    At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any goods or services as a result of any transactions made creating the Alleged Debt.

28.    At all material times herein, MOHELA, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a student loan, on which MOHELA assessed finance charges.

29.    At all material times herein, MOHELA is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

30.    At all material times herein, Defendants' conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by the FDCPA.

31.    At all material times herein, MOHELA furnishes information to Trans Union regarding the Account and the corresponding Alleged Debt referenced by account number beginning in 298720- and/or 2143821541- (hereinafter, the "Account").

32.    At all material times herein, MOHELA furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

33.    At all material times herein, MOHELA's conduct, with regard to the Alleged Debt complained of below, qualifies as a "communication" as defined by the FDCPA.

34.    At all material times herein, Trans Union is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

35.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

36.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

37.    On or about to February 10, 2023, a MOHELA student loan account was allegedly opened in Plaintiff's name (the "Account").

8

38.    To the extent the Account was opened by an individual or entity, such individual or entity opened the Account without Plaintiff's consent, knowledge, or approval.

39.    To the extent that the MOHELA Account was opened, resulting in a an alleged balance due (i.e., the Alleged Debt), Plaintiff did not apply for the loan himself, Plaintiff did not authorize any other individual or entity to apply for the loan for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of the opening of the MOHELA Account.

40.    As such, Plaintiff does not owe a balance to MOHELA, as any balance incurred by the opening of the MOHELA Account was created due to identity theft and fraud.

41.    On or about March 18, 2023, Plaintiff received an alert from Equifax that two new accounts had been opened on his credit reports.

42.    At this time, Plaintiff discovered two student loan accounts reported by MOHELA appearing on his credit reports as maintained by Equifax, Experian, and Trans Union.

43.    On or about March 18, 2023, Plaintiff filed an identity theft affidavit with the Federal Trade Commission, identified by report number 157711791.

44.    During or prior to March 2024, Plaintiff began receiving letters from MOHELA regarding the Account in an attempt to collect the Alleged Debt.

45.    More specifically, on or about March 21, 2024, MOHELA sent a letter to Plaintiff announcing a change to the repayment schedule associated with the

Alleged Debt.

46.    To be clear, Plaintiff owes no balance to MOHELA, as any balance incurred by the opening of the MOHELA Account was created due to identity theft and fraud.

47.    On or about March 30, 2023, Plaintiff filed an identity theft police report with the Tampa Police Department, identified by report number 23-134233.

48.    Further, Plaintiff has never made payment on the Account, as Plaintiff did not open the Account.

49.    During or about April 2024, MOHELA sent a billing statement to Plaintiff asserting a principal balance of $892.21 as owed on the Alleged Debt and demanding payment of $51.55.

50.    MOHELA's April 2024 Billing Statement constitutes a direct attempt by MOHELA to collect the Alleged Debt.

51.    On or about April 28, 2024, MOHELA sent a letter to Plaintiff asserting that the Alleged Debt was one payment past due and demanding payment on the Alleged Debt.

52.    MOHELA's April 28, 2024 Letter constitutes a direct attempt by MOHELA to collect the Alleged Debt.

53.    During or about May 2024, MOHELA sent a billing statement to Plaintiff asserting a principal balance of $896.21 as owed on the Alleged Debt and demanding payment of $103.10.

54.    MOHELA's May 2024 Billing Statement constitutes a direct attempt by

MOHELA to collect the Alleged Debt.

55.     On or about May 28, 2024, MOHELA sent a letter to Plaintiff asserting that the Alleged Debt was over 30 days past due and demanding payment on the Alleged Debt.

56.     MOHELA's May 28, 2024 Letter constitutes a direct attempt by MOHELA to collect the Alleged Debt.

57.     During or about June 2024, MOHELA sent a billing statement to Plaintiff asserting a principal balance of $899.85 as owed on the Alleged Debt and demanding payment of $154.65.

58.     MOHELA's June 2024 Billing Statement constitutes a direct attempt by MOHELA to collect the Alleged Debt.

59.     On or about June 24, 2024, MOHELA sent a letter to Plaintiff asserting that the Alleged Debt was past due and demanding payment on the Alleged Debt.

60.     MOHELA's June 24, 2024 Letter constitutes a direct attempt by MOHELA to collect the Alleged Debt.

61.     On or about June 28, 2024, MOHELA sent a letter to Plaintiff asserting that the Alleged Debt was over 60 days past due and demanding payment on the Alleged Debt.

62.     MOHELA's June 28, 2024 Letter constitutes a direct attempt by MOHELA to collect the Alleged Debt.

63.     During or about July 2024, MOHELA sent a billing statement to Plaintiff asserting a principal balance of $903.61 as owed on the Alleged Debt and demanding

payment of $206.20.

64.    MOHELA's July 2024 Billing Statement constitutes a direct attempt by MOHELA to collect the Alleged Debt.

65.    On or about July 26, 2024, MOHELA sent a letter to Plaintiff announcing a change to the repayment schedule associated with the Alleged Debt.

66.    More specifically, MOHELA's July 26, 2024 Letter asserted an increased balance of $946.98 as due on the Alleged Debt.

67.    MOHELA's July 26, 2024 Letter constitutes a direct attempt by MOHELA to collect the Alleged Debt.

68.    During or about September 2024, MOHELA sent a billing statement to Plaintiff asserting a principal balance of $910.86 as owed on the Alleged Debt and demanding payment of $52.61.

69.    MOHELA's September 2024 Billing Statement constitutes a direct attempt by MOHELA to collect the Alleged Debt.

70.    During or about November 2024, MOHELA sent a billing statement to Plaintiff asserting a principal balance of $918.20 as owed on the Alleged Debt and demanding payment of $52.61.

71.    MOHELA's November 2024 Billing Statement constitutes a direct attempt by MOHELA to collect the Alleged Debt.

72.    MOHELA's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under federal law.

73.    Given MOHELA's conduct and its apparent intention and ability to

continue to collect the Alleged Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

74.    Plaintiff needs and is entitled to injunctive relief with respect to MOHELA's debt collection communications in violation of the FCCPA.

75.    MOHELA's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing the Alleged Debt personally, Plaintiff had no choice but to pay the Alleged Debt or continue to endure MOHELA's unlawful debt collection practices.

### DEFENDANTS' CREDIT REPORTING OF THE ACCOUNT AND PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA

76.    During or prior to September 2024, Plaintiff obtained copies of his consumer disclosure reports from Experian and Trans Union.

77.    Despite never personally opening the Account nor authorizing anyone to open the Account on his behalf, MOHELA, Experian, and Trans Union reported the Account as owed by Plaintiff.

78.    Defendants' reporting of the Account as owed by Plaintiff personally is inaccurate because the Account was opened as the result of identity theft and fraud.

79.    Additionally, MOHELA, Experian, and Trans Union reported the Account with a date of last payment of February 8, 2024, and with a date opened of February 10, 2023.

80.    To be clear, Plaintiff never opened the Account and did not make any payments on the Account.

81.    On or about September 19, 2024, Plaintiff sent a letter, with the assistance of his attorneys, to Experian and Trans Union, respectively, disputing Defendants' ongoing reporting of the Account with a balance owed and as belonging to Plaintiff (hereinafter, "First Dispute").

82.    More specifically, Plaintiff's First Dispute advised Experian and Trans Union that the Account did not belong to Plaintiff and requested that Defendants delete the Account from his credit reports and credit files.

83.    Plaintiff enclosed a copy of his police report, FTC ID Theft Affidavit, and FBI Report in support of his dispute.

84.    Experian received Plaintiff's First Dispute.

85.    Experian communicated Plaintiff's First Dispute to MOHELA.

86.    MOHELA received notice of Plaintiff's First Dispute via Experian.

87.    In response to Plaintiff's First Dispute, Experian deleted its reporting of the Account.

88.    Trans Union received Plaintiff's First Dispute.

89.    Trans Union communicated Plaintiff's First Dispute to MOHELA.

90.    MOHELA received notice of Plaintiff's First Dispute via Trans Union.

91.    In response to Plaintiff's First Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union as an account that was closed due to transfer with a $0 balance.

92.    During or prior to April 2025, Plaintiff obtained copies of his consumer

14

disclosure reports from Equifax and Trans Union.

93.    Despite never personally opening the Account nor authorizing anyone to open the Account on his behalf, MOHELA, Equifax, and Trans Union reported the Account as a current payment obligation of Plaintiff's personally.

94.    Defendants' reporting of the Account as owed by Plaintiff personally is inaccurate because any alleged balance owed was the result of identity theft and fraud.

95.    Additionally, MOHELA, Equifax, and Trans Union reported the Account with a date of last payment of February 8, 2024, and with a date opened of February 10, 2023.

96.    To be clear, Plaintiff never opened the Account and did not make any payments on the Account.

97.    On or about April 1, 2025, Plaintiff sent a second letter, with the assistance of his attorneys, to Equifax and Trans Union respectively, *again* disputing Defendants' reporting of the Account hereinafter, "Second Dispute").

98.    Specifically, Plaintiff's Second Dispute advised Equifax and Trans Union that the Account balance was a result of identity theft and fraud, directed Defendants to the identity theft report Plaintiff filed, and requested that Defendants delete the Account from Plaintiff's credit reports and credit files.

99.    Plaintiff *again* enclosed copies of his police report, FTC ID Theft Affidavit, and FBI Report in support of his dispute.

100.    Equifax received Plaintiff's Second Dispute.

101.    Equifax communicated Plaintiff's Second Dispute to MOHELA.

15

102.    MOHELA received notice of Plaintiff's Second Dispute via Equifax.

103.    In response to Plaintiff's Second Dispute, Equifax deleted its reporting of the Account.

104.    Trans Union received Plaintiff's Second Dispute.

105.    Trans Union communicated Plaintiff's Second Dispute to MOHELA.

106.    MOHELA received notice of Plaintiff's Second Dispute via Trans Union.

107.    In response to Plaintiff's Second Dispute, Trans Union finally deleted its reporting of the Account.

## DAMAGES

108.    As a result of Defendants' reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by MOHELA if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

109.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as a current payment obligation of

Plaintiff's personally.

110.    Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct.

111.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he did not initiate or authorize the opening of the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account and MOHELA's ongoing attempts to collect the Alleged Debt.

112.    Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC d/b/a Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>
### (As to MOHELA Only)

Plaintiff re-alleges paragraphs one (1) through one hundred and twelve (112) as if fully restated herein and further states as follows:

113.    MOHELA is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Trans Union delete the Account from

Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

114.    As described above,  Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff does not have any active or closed student loan accounts with MOHELA; (ii) Plaintiff did not personally apply for the Account or open the Account; (iii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iv) Plaintiff possessed no knowledge of the Account that was alleged opened in 2023 until he received an alert through Experian that the Account was being reported; (v) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; (vii) Plaintiff completed an FTC Identity Theft Report; (viii) Plaintiff completed a police report; and (ix) Plaintiff completed an FBI report.

115.    Despite Plaintiff not being responsible for the Alleged Debt, and despite MOHELA receiving notice of Plaintiff's disputes from Plaintiff, Trans Union—including the information and documents referenced in the above paragraph—MOHELA willfully and/or negligently failed to request that Trans Union delete the tradeline associated with the Account and continued to report the Account to Trans Union as belonging to Plaintiff personally.

116.    Between September 2024 and April 2025, Plaintiff repeatedly disputed MOHELA's reporting of the Account to Trans Union, and the credit reporting agencies forwarded Plaintiff's disputes to MOHELA.

117.    In total, MOHELA received *at least* four (4) disputes from Equifax,

Experian, and Trans Union regarding its reporting of the Account.

118.   The documents Plaintiff enclosed in support of his disputes included an FTC Identity Theft Report, a police report, and an FBI report proving that Plaintiff did not owe the Alleged Debt forming the basis of the Account.

119.   In response to Plaintiff's disputes, despite MOHELA receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union—including the information and documents referenced in the above paragraph— MOHELA failed to request that Trans Union delete the Account from Plaintiff's credit reports and credit files.

120.   Instead, MOHELA purportedly verified and/or updated its reporting of the Account as belonging to Plaintiff personally.

121.   MOHELA's refusal to request that Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as MOHELA clearly possessed knowledge that the Alleged Debt was a result of identity theft and fraud.

122.   MOHELA's re-investigations were not conducted in good faith.

123.   MOHELA's re-investigations were not conducted reasonably.

124.   MOHELA's re-investigations were not conducted using all information and documents reasonably available to MOHELA.

125.   As a result of MOHELA's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable

credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as a current payment obligation of Plaintiff's personally.

126.    MOHELA's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

127.    MOHELA's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>
### (As to Trans Union)

Plaintiff re-alleges paragraphs one (1) through one hundred and twelve (112) as if fully restated herein and further states as follows:

128.    Trans Union is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

129.    Trans Union willfully and/or negligently failed to establish or follow

reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Account.

130.    Specifically, despite Plaintiff *repeatedly* advising Trans Union that Plaintiff did not open the Account, did not authorize any other person to open the Account in his name or on his behalf, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the Account was opened as a result of identity theft and fraud—Trans Union continued to report the Account as a current payment of Plaintiff's personally.

131.    Further, willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Trans Union credit reports and credit files.

132.    For example, despite Plaintiff's repeated disputes including the identity theft report documents proving he did not owe the Alleged Debt forming the basis for the Account, Trans Union did not delete the Account from Plaintiff's credit reports and credit files in response to Plaintiff's First Dispute and Trans Union failed to request documents from MOHELA in support of MOHELA's reporting of the Account.

133.    Despite Plaintiff notifying Trans Union of its reporting errors and providing documents in support of his disputes, Trans Union continued to report the Account as belonging to Plaintiff personally, and subsequently published Plaintiff's credit reports to Plaintiff current creditors and/or potential future creditors including the inaccurately reported Account.

134.    As a result of Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as a current payment obligation of Plaintiff's personally.

135.    Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

136.    Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.*
(As to Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred and twelve (112)  as if fully restated herein and further states as follows:

137.    Trans Union is subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of

Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

138.    Specifically, Trans Union willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

139.    Overall, Plaintiff's First Dispute and Second Dispute provided Trans Union with sufficient information and supporting documentation allowing Trans Union to identify that the Account was created as a result of identity theft and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

140.    For example, despite Plaintiff's repeated disputes including the identity theft report documents proving he did not owe the Alleged Debt forming the basis for the Account, Trans Union did not delete the Account from Plaintiff's credit reports and credit files in response to Plaintiff's First Dispute and Trans Union failed to request documents from MOHELA in support of MOHELA's reporting of the Account.

141.    Following Plaintiff's First Dispute, Trans Union continued to report the Account in Plaintiff's credit reports and files.

142.    Given that Plaintiff did not personally open the Account, did not

23

authorize anyone to open the Account in his name, and did not benefit from the Account in any way, and given that Trans Union did not request any documents from MOHELA supporting MOHELA's reporting of the Account, Trans Union could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

143. As such, Trans Union's re-investigations was not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

144. Such reporting is false and evidences Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

145. Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

146. Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by MOHELA.

147. Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

148. Trans Union's reinvestigation procedures are unreasonable.

149. Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Trans Union.

150. Trans Union's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the Account was created as a

result of identity theft and fraud—was done in bad faith.

151. Trans Union's reinvestigations were *per se* deficient by reason of these failures in Trans Union's reinvestigations of Plaintiff's disputes and the Account.

152. As a result of Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account as a current payment obligation of Plaintiff's personally.

153. Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

154. Trans Union's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT FOUR:
### UNLAWFUL DEBT COLLECTION PRACTICE – <u>VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(7) AND (9)</u>
### (As to MOHELA)

Plaintiff re-alleges paragraphs one (1) through seventy-five (75) as if fully

restated herein and further states as follows:

155.    MOHELA is subject to, and violated the provisions of, Florida Statutes, Sections: 559.72(7) by attempting to collect an alleged consumer debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff; and 559.72(9) by attempting to collect the Alleged Debt with knowledge that the Alleged Debt is not legitimate or by asserting the existence of a legal right when Defendant knows that the right does not exist.

156.    Specifically, Plaintiff never opened the Account creating the Alleged Debt, never authorized another person to create the Alleged Debt, and Plaintiff obtained no benefit from the goods or services resulting from the Alleged Debt because any balance alleged to be owed was created due to identity theft and fraud.

157.    As such, Plaintiff never owed the Alleged Debt.

158.    Beginning in March 2024, MOHELA began sending billing statements and collection letters to Plaintiff.

159.    More specifically, beginning in March 2024, Plaintiff received at least ten (10) debt collection letters.

160.    Upon discovering the Account being reported on Plaintiff's Equifax, Experian, and Trans Union credit reports, Plaintiff disputed the Account, advising Defendants that Plaintiff did not owe a balance to MOHELA.

161.    As such, as of September 2024, MOHELA received notice and MOHELA possessed knowledge that Plaintiff did not owe a balance to MOHELA because any balance alleged to be owed was created due to identity theft and fraud.

162. Despite Plaintiff not owing a balance to MOHELA, MOHELA sent at least two (2) letters to Plaintiff following Plaintiff's First Dispute demanding a balance of $918.20 in its attempt to collect the Alleged Debt.

163. As such, MOHELA's collection letters constitute a direct attempt by MOHELA to collect the Alleged Debt from Plaintiff.

164. MOHELA sent the collection communication to Plaintiff in an attempt to abuse and harass Plaintiff into paying the Alleged Debt by leading Plaintiff to believe that despite Plaintiff not owing the Alleged Debt, MOHELA could and would continue to communicate with Plaintiff in an attempt to collect the Alleged Debt unless and until Plaintiff made payment to MOHELA on the Alleged Debt.

165. In other words, MOHELA's conduct served no purpose other than to wrench payment from Plaintiff on a consumer debt Plaintiff does not owe.

166. MOHELA's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

167. Moreover, MOHELA knew that Plaintiff did not owe $918.20 on the Alleged Debt yet MOHELA's collection communication demanded over $918.00 from Plaintiff on the Alleged Debt.

168. As such, MOHELA communicated with Plaintiff in an attempt to collect an Alleged Debt known by MOHELA to be illegitimate in violation of Florida Statutes, Section 559.72(9).

169.   As a direct and proximate result of MOHELA's action, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.   Judgment declaring that MOHELA violated the FCCPA;

b.   Judgment against MOHELA for maximum statutory damages under the FCCPA;

c.   Judgment against MOHELA and Trans Union for maximum statutory damages for violations of the FCRA;

d.   Actual damages in an amount to be determined at trial;

e.   Compensatory damages in an amount to be determined at trial;

f.   Punitive damages in an amount to be determined at trial;

g.   An award of attorney's fees and costs; and

h.   Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data— pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 19, 2025, I filed a true and correct copy of

the above and foregoing *Complaint* via CM/ECF which shall serve a copy of the same

to all counsel of record.

/s/ *Jon P. Dubbeld*
Attorney